## COVINGTON CITY NAT. BANK v. COMMERCIAL BANK OF CINCINNATI et al.

(Circuit Court, S. D. Ohio, W. D. February 4, 1895.)

No. 4,624.

1. BANKS—LIEN ON STOCK FOR DEBT OF HOLDER—CERTIFICATE—CUSTOM—NOTICE.

Where there is a custom between brokers and bankers that, on application of a broker, a bank will certify as to whether it has any lien on certain of its stock by reason of the holder thereof being indebted to it, a bank, by being asked by a broker to give such a certificate, is thereby put on inquiry, and charged with notice, as much as though told that a loan for a certain amount had been or was to be made to the holder of the stock by a certain person.

2. SAME—WHO ENTITLED TO BENEFIT OF CERTIFICATE.

Such a certificate, obtained by a broker on behalf of one who had already made a loan to the holder of the stock on his note and the stock as security, does not inure to the benefit of a subsequent transferee of the note, who takes it relying on the personal responsibility of the maker and the security of the stock, without knowledge of the certificate.

3. MARSHALING SECURITIES.

Where a bank, a money loaner, and a broker have, in the order named, liens on stock of the bank, and the bank has an exclusive lien for its claim on other security, the bank will be compelled to resort first to the latter security.

Suit by the Covington City National Bank against the Commercial Bank of Cincinnati and others to determine the right of lien on certain stock in defendant bank.

Ramsey, Maxwell & Ramsey, for complainant.

Swing & Morse, E. R. Donohue, and Matthews & Cleveland, for respondents.

SAGE, District Judge. On the 28th of November, 1888, H. B. Morehead & Co., brokers, procured from the Amazon Insurance Company, of Cincinnati, Ohio, a loan of $4,500 to Charles W. Short, for which he gave his demand note, payable to his own order, indorsed by him, and secured by the pledge of 100 shares, of the par value of $50 each, of the capital stock of the defendant the Commercial Bank of Cincinnati. The note bears date October 1, 1887; and the stock certificate, November 28, 1888. The explanation is that Short had a call loan, placed by H. B. Morehead & Co., for $15,000, secured by 300 shares of Commercial Bank stock. Two hundred shares were sold by Morehead & Co.; the amount of the loan reduced to $4,500; the original note taken up and canceled; a new call note executed therefor by Short, of the same date and description as the original note. The loan was then—that is to say, on the 28th of November, 1888—placed with the Amazon Insurance Company, where it remained until July 28, 1890; it then went to another party, where it remained until December 11, 1890; then to another party, where it remained until December 26, 1890; then to another, where it remained until March 30, 1892; then to still another, where it remained until August 5, 1892; and then to the complainant. The

names of the holders, above referred to, of the note, are not disclosed. The testimony is that the names of the lenders in such cases are regarded as confidential by the brokers, and not made known even to the borrowers. The successive transfers were in accordance with the usual course of business in such transactions. When a loan is "called," to use the current expression, the broker, if possible, finds a new taker for the note, and the transfer may be accomplished without notice to, or the knowledge of, the borrower.

Shortly after the loan was placed with the Amazon Insurance Company, the defendant Ballman, then representing Morehead & Co., at the instance of the president of the Amazon Insurance Company, notified Short that a certificate from the Commercial Bank, that he was not indebted to the bank, was necessary to continue the loan. Short suggested that Ballman call upon the bank, which he did, and, according to his testimony, notified Mr. Campbell that Morehead & Co. had on their books a loan to Short of $4,500, secured by 100 shares of the stock of the bank, and that it was necessary to have from the bank an acknowledgment in writing that Short was in no way indebted to the bank. This, the witness testifies, was in the usual course of business with the bank, and such applications had been repeatedly made and granted upon similar occasions. Mr. Campbell, as cashier, thereupon gave to Mr. Ballman a certificate in writing, upon a letter head of the Commercial Bank, as follows: "This is to certify that Mr. Charles W. Short is in no way indebted to this bank, and that we have no lien upon his certificate for one hundred shares of Commercial Bank stock." It was signed "W. H. Campbell; Cashier," and delivered to Mr. Ballman. The certificate has been lost. Its precise date is not given in the testimony. The only designation of time is that it was shortly after the acceptance of the loan by the Amazon Insurance Company. The fact was as stated in the certificate; that is to say, at that time Short was not indebted to the bank. There was no inquiry or request concerning the release of any lien the bank might have for any future indebtedness, nor was anything said on that subject. The cashier testifies that he was not told why, or for whose benefit, the statement was wanted, and that he had no knowledge or information what use Ballman intended to make of it, and, further, that he was not told of the loan. No other notice was given to the bank. At that time Short was quoted or "rated on the street" as being a millionaire, and Mr. Ballman testifies that so small an amount as $4,500 was not considered anything to have Short's signature attached to. The complainant never had possession or any knowledge of the certificate until after it called the loan. It took the loan upon its reliance on the note of Short, and the certificate of stock as collateral thereto. That certificate contains a clause which declares that the stock is subject, with all dividends thereon, for any debts or demands due from the holder, said Charles W. Short, to the Commercial Bank, which clause is in accordance with the provision of the statute under which the stock was issued.

The president of the complainant testifies that on the 5th of August, 1892, when he purchased the note for the complainant, he went

to the office of Irwin, Ellis & Ballman, successors to H. B. Morehead's successors, seeking for investments for the complainant, and was shown a slip of paper, with Charles W. Short's note, and collateral of 100 shares of stock of the Commercial Bank of Cincinnati, at 4 per cent., payable on demand. He agreed to take it. He did not look at the note or the collateral. It remained at 4 per cent. until December 28, 1892, when he called it up to 6 per cent. Soon afterwards—the exact date is not stated, but shortly before the assignment of Short, the date of which does not appear in the testimony, but is averred in the bill to be "on or about January, 1893"—the complainant called the note. Short had then become insolvent, and was on the eve of making an assignment under the state law of Ohio. The note was not paid. A sale of the stock was negotiated by Irwin, Ellis & Ballman, but, the Commercial Bank refusing to transfer the stock, the sale fell through. Short was then, and for some time prior thereto, but subsequent to the date of the certificate hereinbefore referred to, had been, indebted to the Commercial Bank, as will be more particularly set forth hereinafter. A claim is made by cross bill in favor of Irwin, Ellis & Ballman, upon facts which will be stated in connection with the consideration thereof. There is some slight discrepancy between Ballman and Campbell as to what was said when the certificate was asked for by Ballman, and they do not agree precisely as to the contents of the certificate. Mr. Campbell does not remember that Mr. Ballman referred to any loan. Their difference with reference to the contents of the certificate is not material, and it is not necessary to enter further into details with regard to it. The testimony of Ballman that it was the custom of brokers, known to the banks, to call upon them for certificates such as he called for on this occasion, and that they were for the advice of their customers, is not in dispute. The objection that the notice to the bank was insufficient because it did not specify that there was a loan, or who was the lender, is not well founded. Accepting the version of the facts given by the cashier, and admitting for the sake of the argument that nothing was communicated to him concerning the loan, what took place, construed in the light of the custom, was sufficient at least to put the Commercial Bank upon inquiry. It must therefore be held chargeable with notice of all the facts it might have learned by pursuing the inquiry. Who was the holder of the loan, and the stock as security, is not material. The bank could have easily ascertained the amount, and that the loan was payable on call. Mr. Ballman testifies that he stated the amount. It must be assumed, therefore, that the bank had notice, and was bound to conduct itself accordingly. But the request for the certificate was made on behalf of the Amazon Insurance Company, after that company had accepted the loan. The certificate had no relation whatever to the negotiation or acceptance of the loan. It may have been that the loan would have been called if the bank had included, in terms, in the certificate, a reservation of its lien for any future indebtedness from Short to it. That circumstance was enough to make the certificate binding upon the bank. The real question is whether the subsequent transfers of the note, of which

there were four, extending over a period of more than two years before the transfer to the complainant, carried with them the benefit of the certificate given by the bank upon the solicitation of the president of the Amazon Insurance Company, to enable him to determine whether he should call the note or continue to hold it. The testimony offered on behalf of the complainant shows that Short, when the certificate was called for, was reputed possessed of great wealth, so that, to quote from the testimony, "the amount of this note would be regarded as a trifling indebtedness, for him." The certificate was lost or mislaid. It does not appear that it passed into the hands of the intermediate holders of the note. The testimony is silent upon that point, but it is significant that not one of those holders was called as a witness. Not only did the complainant bank not take the loan in reliance upon the certificate, but, in addition, it had no knowledge of its existence until after it had called the loan. It then learned that the bank claimed a lien for the amount of Short's indebtedness to it. I am unable to concur in the view of counsel that the certificate inures to the benefit of the complainant. It was no part of the original transaction. It was given to the president of the Amazon Insurance Company to enable him to determine whether to call the note. It served its purpose, was lost or mislaid, and seems to have been regarded of so little consequence that its loss was not discovered until years afterwards. No further mention was made of it. It was apparently treated as functus officio. The giving of it was a collateral incident, in which the complainant was not interested, and with which it is not in privity. The equity of the case in this behalf is with the defendant.

It appears in the testimony that the Commercial Bank is a creditor of Short on his demand note of December 23, 1891, for $7,500, with interest at 7 per cent. from January 1, 1893, and on a note for $800, dated March 8, 1892, drawn to his order, and by him indorsed, with interest from June 11, 1892. For the $7,500 note, the bank holds as collateral 16 bonds of the Southern Marble Company, of the face value of $500 each. It also holds as collateral for both of said notes a promissory note for $3,500 drawn in favor of the order of Short, payable two years after date, and secured by mortgage on real estate.

The defendants Irwin, Ellis & Ballman set up by cross bill that there is due them $957.35, with interest from October 30, 1892, on account of interest paid by them for Short, and for advances and commissions made in respect to the loan in question, prior to that time. The cross bill sets up that, by the custom of bankers and brokers in the city of Cincinnati and elsewhere, a lien arises in favor of brokers for the amount of interest, commissions, and advances on account of loans placed by them, and of the character of the loan in question in this case. This custom is admitted by the defendant the Commercial Bank. It is also in testimony, and undisputed, that it is always understood that the payment of interest by the broker for the maker of the note entitles him to a lien. That lien also will be recognized. The first lien is in favor of the Commercial Bank, the second is in favor of the complainant, and the third in favor of Irwin, Ellis & Ballman. The complainant and the defendants Irwin, Ellis

& Ballman are entitled to have the securities marshaled; that is to say, the Commercial Bank, having the exclusive benefit of the securities, aside from the capital stock owned by Short, and held by the complainant as collateral, will be entitled to resort to any or all of its securities for payment. If there be anything left of the securities held by it exclusively, after the payment of its claims, the defendants will be entitled to subrogation in the order of their liens.